363 P.2d 777

In the Matter of the General Determination of Rights to the Use of all Water, Both Surface and Underground, in the ESCALANTE VALLEY DRAINAGE AREA.

In re: WATER USERS' CLAIMS NOS. 551, 479, 611, 612 and 1342.

J. Delmar KIRK, Executor of the Estate of D. E. Kirk, deceased et al., Plaintiffs and Appellants,

v.

Wayne D. CRIDDLE, State Engineer of the State of Utah; and Milford Primary Rights Pumpers Association, an unincorporated association, Defendants and Respondents.

No. 9283.

Supreme Court of Utah.

July 14, 1961.

Cline, Wilson & Cline, Milford, for appellants.

Walter L. Budge, Atty. Gen., Richard R. Boyle, Asst. Atty. Gen., E. J. Skeen, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs appeal from a decree entered in a general adjudication of water rights in what is known as the Escalante Valley Drainage Area, which decree disallowed their claims to underground waters on the basis of our statute which provides for forfeiture of water rights in the event of nonuse for a period of five years.[1]

Their claims are based on wells which had been dug and used during the 1920's in connection with improving certain lands as part of homestead requirements. The evidence is that no water has been used from any of the wells since 1931.

Formerly our statute providing that water reverts to the public if not used for a period of five years expressly excluded underground water from its operation.[2] It was amended to include them, effective May 8, 1945.[3] The plaintiffs do not challenge the facts found by the court that they had made no actual use of such water for a period of five years following that date. The basis upon which they seek to preserve their water rights is that they were excused from the operation of this nonuse statute during part of that five-year period, based on these facts:

In April, 1949, about 13 months before five years had elapsed after the effective date of the statute, the state engineer, pursuant to Sec. 73-4-1 et seq., U.C.A.1953, filed a proposed general determination of water rights in the Escalante Valley Drainage Area which did not allow plaintiffs water rights in their wells. It is plaintiffs' position that this had the effect of prohibiting them from using water and thus

---

1. 73-1-4, U.C.A.1953.

2. The statute cited in footnote 1, supra, was Sec. 100-1-4, U.C.A.1943, and until 1945, contained the following provision: " \* \* \* nothing in this section shall apply to underground or subterranean waters."

3. S.L.U.1945, Chap. 134, Sec. 1. That rights to underground water were not forfeited for nonuser prior to May 15, 1945, see Cook v. Tracy, 6 Utah 2d 344, 313 P.2d 803.

arrested the running of the statute against them and saved their rights from forfeiture.

Section 73–4–11, U.C.A.1953 provides that in general adjudication proceedings "the state engineer shall formulate a proposed determination of all rights to the use of the water of such * * * water source, and a copy of the same shall be mailed * * * to each claimant, with notice that any claimant dissatisfied therewith may within 90 days * * * file with the * * * court a written objection thereto * * *" and further that "the state engineer shall distribute the waters from the natural stream or other natural source in accordance with the proposed determination * * * until a final decree is rendered by the court."

 We agree that the plaintiffs should be neither expected nor required to use their water contrary to the state engineer's proposed determination in order to protect their rights. We are also in accord with the idea that the statute is framed in terms of forfeiture for nonuse of water regardless of the intent or purpose of the person claiming the rights; and we recognize the importance of applying it in that manner in order to assure the greatest possible beneficial use of the water resources of our state. But the fact that one's intent is not the governing factor in losing water rights for nonuse does not mean that his rights will be forfeited for that cause even though there is a legal barrier to his use of the water. It would be anomalous and arbitrary to require that one use water in contravention of a legal determination of his right thereto in order to preserve his claim to it. To thus put a premium on flouting the orderly processes of law and penalize those who obey its mandates would tend to encourage disobedience of orders of the state engineer and add to the already too numerous difficulties in effecting orderly distribution of water pending final decrees in general adjudication proceedings. These considerations impel us to conclude that the filing of the state engineer's proposed determination before the five years had run interrupted the running of the nonuse statute against the plaintiffs.

A point is made of the fact that the plaintiffs did not actually file protests prior to May 15, 1950, and thus within five years after the effective date of the statute. This fact is not controlling since they did, within the time extended by the court, file protests to the proposed determination. As above indicated, it was the latter, entered 13 months before the five-year period from the effective date of the statute had elapsed, which prevented the statute from running against the plaintiffs. Inasmuch as the trial court based its determination upon a finding of five years' nonuse under that statute, its decree must be set aside.

A comment is in order upon the defendants' argument that the decree was sustainable also on the separate ground of abandonment. This differs from the nonuse provided by the statute hereinabove discussed in that abandonment requires proof of an intent to abandon the water right. Upon that issue the court found that, "no contention is made by any party that any claimant intended to abandon the use of water from any of said wells and no finding is made as to abandonment. * * *" This finding is justified because there is no evidence in the record, and the defendants did not offer to produce any, which would warrant a finding of abandonment.

Concerning the dispute over the acreage involved on the claim of Perrine Howarth: we regard the evidence as justifying the refusal to find 20 acres shown by the application and as supporting the finding of 10 acres made by the trial court.

It is ordered that the decree disallowing plaintiffs' claims to water rights be set aside and one entered in conformity with this decision. Costs to appellants.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, Justice (concurring in part).

I concur except as to the affirmance of the trial court's finding that 10 and not 20 acres were involved. The application definitely asked for 20 acres, which prima facie established that fact, unless refuted by some kind of substantial evidence. Only evidence remotely approaching such refutation was that of one witness who, after 24 years, said "If I remember correctly a fellow * * * had a small irrigated tract, *I wouldn't say how many acres*" and that "I don't imagine more than 10 acres were irrigated." On cross examination he said it could have been 20 acres and that he would not dispute the fact that 20 acres had been cultivated.

It is difficult for this writer to justify a finding flying in the teeth of undisputed documentary evidence, reflected in the application, based on the ethereal contradictions of someone who obviously didn't know about what he was talking. I think the records of the State Engineer—something we may judicially notice, successfully should not be controvertible by the quality of testimony mentioned above.